WADE v. JOHN THOMSON PRESS CO.

(Circuit Court, D. Connecticut. March 8, 1906.)

No. 555.

MASTER AND SERVANT—INJURY OF SERVANT—ASSUMED RISK.

Plaintiff's intestate was employed by defendant to attend to repair work on the machinery in its shop, as to which he was competent and of large experience. He was sent by the foreman to repair a tight pulley on a planer in a large and well-lighted room. The machinery was accessible and convenient to be repaired, and the only thing required was to tighten a set screw. Deceased pushed the belt from the pulleys on the main and countershafts, and later, in order to better get at the work, he undertook to carry the belt across the pulleys, and in some way it became looped and doubled on the main shaft, and immediately wound up and pulled the hangers of the countershaft from their fasten-

ings, and such shaft fell upon and injured him, causing his death. There was no defect in the machinery which caused the accident, the danger was as obvious and well known to the deceased as to the fore-man, and there were other employés whom he was authorized to call to his assistance, if he had desired. *Held*, that there was no neg-ligence on the part of defendant which rendered it liable for the injury, but that it resulted solely from a risk voluntarily assumed by deceased.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 550, 610–614.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

At Law.

Joseph L. Barbour, for plaintiff.
Gross, Hyde & Shipman, for defendant.

PLATT, District Judge. The complaint in this case seeks to recover damages on account of the negligence of the defendant. It was prop-erly transferred from the superior court for Hartford county, and after default, notice of intention, etc., testimony has been presented affecting the matter of damages in the usual matter adopted in the state practice, briefs have been submitted thereon, and the court now finds the following facts:

William Kinghorn, plaintiff's intestate, was employed by the de-fendant as a handy all-around man to do repair work upon its ma-chinery. He was of large experience, and was able to do excellent work of that kind. On December 28, 1903, at about 9 o'clock in the fore-noon, he was sent by the foreman to repair the tight pulley on a certain planer. The trouble with the pulley was that the set screw had be-come loose and needed tightening. The planer and shafting were in a large, well-lighted room, and the machinery in question was accessi-ble and convenient to be repaired. The pulleys used in connection with the planer were carried by a countershaft, which was held up by hangers attached to stringers above by lag screws. All of the ma-chinery connected with the accident was of the right kind, strong enough, and properly secured in place. As will be seen later, it with-stood at the time of the accident a strain of about 7,500 pounds, which seriously twisted the steel countershafting before the hangers were torn from the stringers, although for all natural and normal uses the strain would not exceed 200 pounds. The strength of the belt is evidenced by the strain it endured before breaking. Kinghorn found upon examination that he could not easily do the work at which he had been put without pushing off the belt which connected the counter-shaft with the main shaft, which latter was about eight feet away, running parallel with the former, and at about the same height from the floor. The superintendent, happening to be near by, Kinghorn asked him if he might push off the belt, and was told that he might do so, but to take no risks. He thereupon reached up from the floor with a stick, and pushed the belt off the pulleys on the main shaft, and, climbing upon the planer, pushed with his hands the belt off the pulleys on the countershaft, in each case upon the same side of the pul-leys, and he then endeavored to make the repairs. All that he had done up to this time was safe and required no helper. He was probably

dissatisfied with the location of the belt on the countershaft, and so began very soon to carry the belt across the pulleys. This was a dangerous thing to do. He had gotten it about half across, so that it was bearing upon both the tight and loose pulleys, when the belt became doubled and looped upon the main shaft, and was instantly wound up about the drum of the main shaft so that a powerful force was exerted upon the countershaft. This shaft was constructed of steel, and was considerably bent before the hangers which held it were torn from the stringers above. It was then projected against the main shafting, damaging the pulleys and drum, and, rebounding a trifle, fell downwards. The reason for the doubling of the belt around the drum of the main shaft was doubtless because, as Kinghorn carried it across the pulleys on the countershaft, it was necessarily, owing to the relative positions of the two shafts, slanted diagonally from the main shaft, so that the edge nearest the large pulley on the main shaft was caught and doubled under. Rapidly as this happened, there was time for Kinghorn in some way to be thrown down, so that he was caught by the heavy countershaft as it fell, and was found crushed beneath it in such a manner that he soon died. The superintendent casually noticed him as he was passing the belt across the pulleys on the countershaft, but his mind was occupied by many matters. His confidence in Kinghorn was absolute, and the accident came practically as he looked, like a flash of lightning from nearby thunder, leaving no time for warning. It is also doubtful whether the superintendent then appreciated the danger, any more than Kinghorn himself did. It was easy to become wise after the fact, and Kinghorn then knew and had means of knowing as much or more about the danger than the superintendent. There were six or eight men on hand in the factory, kept for the purpose of helping when wanted upon repair job work. Kinghorn had the right to call upon and use them at any moment when he should think that their assistance would add to the safety and convenience of his efforts, and he well knew that he had such right.

Upon the foregoing facts it is not difficult to decide the case. Under the Connecticut practice, in such a situation as this, the defendant assumes the burden of disproving that the negligent acts charged against it caused the injury, and of proving that the plaintiff's intestate was guilty of contributory negligence. If, upon the facts, it appears that defendant's negligence did not cause the injury, or that the deceased was negligent in such manner that, without his act, the injury could not have occurred, then the default of defendant simply admits nominal damages. The law relating to latent and obvious defects, as bearing upon the assumption of risk by the servant, can have no bearing here, because there were no defects, either obvious or latent. It is useless to talk about latent defects in a situation where we find that it takes a 7,500-pound strain to break things which are not ordinarily called upon to endure more than 200 pounds. The complaint charges the defendant with negligence because the hangers of the countershaft were not securely fastened and failed to hold the countershaft securely in place. This appears in paragraph 6, and is the only plain charge of negligence. In paragraph 7 it is charged that plaintiff's

intestate, by direction of defendant's superintendent, got upon the planer and threw off from its pulley the belt connecting the countershaft with the main shaft; but it also charged that he exercised due care in so doing. The complaint then goes on to set forth that the belt became doubled and pulled upon the countershaft, and by reason of the insecurity of the countershaft fastenings to the ceiling it was pulled away from its position and fell upon plaintiff's intestate. The evidence thoroughly disproves the essential parts of the allegations of negligence in both paragraphs. It shows, not only in its preponderance, but beyond reasonable doubt, that the defendant had safe appliances properly located, and that Kinghorn did not use ordinary care in his last act about the belt. It was not pushing the belt off from the pulleys onto the main and counter shafting which was the proximate cause of the accident. If Kinghorn had stopped there, all would have been well. It was his own idea, a moment later, to pass the belt across the pulleys on the countershaft, so that it was forced against the lower part of the pulley on the main shaft. The doubling of the belt followed directly from that action, and the fearful strain came directly from the doubling, and next came the horrible disaster.

It is a sad duty to perform, but I am bound to say that, as the case now stands, it is without a scintilla of merit. Plaintiff now argues that defendant was negligent in not sending a helper with Kinghorn upon so dangerous a job. He admits that upon the complaint as framed there is no basis for such a claim, but he thinks that an amendment should be allowed, so that he may have the benefit of it. Admitting for the moment the court's power in that direction, it seems unnecessary to exercise such power. The job was not upon its face one of unusual danger. The defendant had an ample supply of such help at hand, and Kinghorn knew his rights. It seems too plain to call for argument that Kinghorn assumed the risk when he undertook to carry the belt across the pulleys on the countershaft, since a moment's delay and a single shout would have brought to him that assistance which we can all see to-day would have probably saved his life.

Let judgment be entered for the nominal amount of $25.